/2

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAR 2 4 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| JUAN PEREZ | § | |
|     Plaintiff | § | |
| | § | |
| vs. | § | |
| | § | |
| THE CITY OF BROWNSVILLE, | § | CIVIL ACTION NO. B-03-225 |
| TEXAS; BEN REYNA, INDIVIDUALLY, | § | |
| AND IN HIS OFFICIAL CAPACITY | § | |
| AS FORMER CHIEF OF POLICE; | § | |
| CARLOS GARCIA, INDIVIDUALLY, | § | |
| AND IN HIS OFFICIAL CAPACITY | § | |
| AS CHIEF OF POLICE; JAMES | § | JURY TRIAL REQUESTED |
| PASCHAL, INDIVIDUALLY, AND | § | |
| IN HIS OFFICIAL CAPACITY; | § | |
| AND FRANCISCO GOMEZ | § | |
|     Defendants | § | |

## PLAINTIFF'S SECOND AMENDED ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES JUAN PEREZ, plaintiff, complaining of THE CITY OF BROWNSVILLE, TEXAS; BEN REYNA, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS FORMER CHIEF OF POLICE; CARLOS GARCIA, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS CHIEF OF POLICE; JAMES PASCHAL, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY and FRANCISCO GOMEZ defendants, and for cause of action shows:

II.
PARTIES

1. Plaintiff, JUAN PEREZ (PEREZ) is an individual residing in Cameron County, Texas.

2. Defendant, THE CITY OF BROWNSVILLE, TEXAS (CITY) is a municipal corporation duly incorporated under the laws of the State of Texas, and operating within its geographical boundaries as authorized by its charter. The CITY has filed an answer in this cause. A true and correct copy of this pleading has been served on its attorney of record, Charles

Willete, Jr., WILLETE & GUERRA, L.L.P., 1534 East 6th Street, Suite 200, Brownsville, Texas 78520.

3. Defendant, BEN REYNA, INDIVIDUALLY AND IN OFFICIAL CAPACITY AS FORMER CHIEF OF POLICE, (REYNA) at all times relevant to this lawsuit, was the duly appointed Chief of Police for the City of Brownsville Police Department, and as such was responsible for the management and affairs of the Brownsville Police Department, including its employees. REYNA has filed an answer in this cause. A true and correct copy of this pleading has been served on his attorney of record, Charles Willete, Jr., WILLETE & GUERRA, L.L.P., 1534 East 6th Street, Suite 200, Brownsville, Texas 78520.

4. Defendant, CARLOS GARCIA, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS CHIEF OF POLICE, (GARCIA), is the duly appointed Chief of Police for the City of Brownsville Police Department, and as such was responsible for the management and affairs of the Brownsville Police Department, including its employees. GARCIA has filed an answer in this cause. A true and correct copy of this pleading has been served on his attorney of record, Charles Willete, Jr., WILLETE & GUERRA, L.L.P., 1534 East 6th Street, Suite 200, Brownsville, Texas 78520.

5. Defendant, JAMES PASCHAL, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY, (PASCHAL) at all times relevant to this lawsuit, was the internal affairs investigator for the City of Brownsville Police Department responsible for the management and affairs of the internal investigation of JUAN PEREZ. PASCHAL has filed an answer in this cause. A true and correct copy of this pleading has been served on his attorney of record, Charles Willete, Jr., WILLETE & GUERRA, L.L.P., 1534 East 6th Street, Suite 200, Brownsville, Texas 78520.

6. Defendant FRANCISCO GOMEZ (GOMEZ) is an individual residing in Cameron County, Texas. GOMEZ has filed an answer in this cause. A true and correct copy of this pleading has been served on his attorney of record Michael M. Scott, 1718 Boca Chica Blvd., Brownsville, Texas 78520.

III.

## JURISDICTION AND VENUE

7.  Jurisdiction and venue are proper in this Court for the reason that all or a substantial part of the events or omissions occurred in Cameron County, Texas, and because at least one defendant is located in Cameron County, Texas.

8.  The sums and damages herein alleged are within the jurisdictional limits of the Court.

9.  The Court has jurisdiction over the governmental defendants under 42 U.S.C. §1983, and the 4th and 14th Amendments to the United States Constitution.  The Court has supplemental jurisdiction under 28 U.S.C. §1367 over plaintiff's claims against Defendant Francisco Gomez because Plaintiff's claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution. All condition precedent have been performed or have occurred.

IV.

## FACTS

10.  At all times relevant to this lawsuit, PEREZ was employed as a police officer with the Brownsville Police Department.

11.  At all times relevant to this lawsuit up to and including July 2001, REYNA was the duly appointed chief of police of the Brownsville Police Department.

12.  At all times relevant to this lawsuit from August 2001 to the present, GARCIA has been the duly appointed chief of police of the Brownsville Police Department.

13.  On or about May 9, 2000, PEREZ was working the graveyard shift and was out on patrol within the City of Brownsville, Texas.  While on patrol, PEREZ observed a vehicle unsafely and unlawfully parked next to a fire hydrant at the intersection of 14th Street and Arthur Street.  Also located at this intersection was a bar known as the "El Rincon de Pancho Bar", which was owned and operated by GOMEZ.  As PEREZ was performing his official duties in trying to locate the owner of the illegally parked vehicle, GOMEZ approached him and interfered with his work.  GOMEZ became belligerent and hostile. PEREZ requested that GOMEZ step away from him, and at that point, GOMEZ got into close proximity with PEREZ, such that PEREZ smelled the odor of alcoholic

beverage about GOMEZ, and observed his physical characteristics and mannerisms which indicated that GOMEZ was intoxicated. After some effort, PEREZ was able to convince GOMEZ to go back into his bar. The vehicle owner voluntarily left the area in his car.

14. Later that night at about 2:00 a.m. while still on his shift, PEREZ was finishing paperwork concerning the booking of a prisoner at the city jail. While still at the city jail, PEREZ was advised out of courtesy by Officer Oscar Trevino that someone was in the front lobby of the police station wanting to speak to a supervisor about him. Officer Trevino was working relief for Officer Lonnie Cook who was the officer assigned to work the information booth in the front lobby of the police station. While still at the city jail, he received another call from Officer Cook that there was a male in the lobby. PEREZ advised that he would make his way to the front lobby. As PEREZ made his way to the front lobby, he met up with Officer Trevino who told him that the individual in the front lobby was publicly intoxicated.

15. PEREZ arrived at the front booth where Officer Cook pointed out the male individual leaning up against a pillar in the lobby. PEREZ recognized the individual as GOMEZ who was the person he had made contact with at the bar earlier in evening. PEREZ proceeded to make contact with GOMEZ in the lobby. Upon making contact with GOMEZ, PEREZ had an opportunity to observe GOMEZ and he determined that GOMEZ was showing signs of being intoxicated. Specifically, PEREZ noticed that GOMEZ exhibited the classic elements of intoxication such as red, bloodshot eyes, slurred speech, the odor of about him, and unsteady balance. PEREZ then asked GOMEZ how he had arrived at the station and how much he had to drink. GOMEZ responded that he had four or five and that he had arrived in his vehicle. PEREZ observed GOMEZ to be holding the keys to his vehicle in his hand. At that point, after evaluating, observing and interviewing GOMEZ, PEREZ concluded that GOMEZ met the elements of public intoxication, including posing a danger to himself or others if allowed to leave in his intoxicated state, and placed GOMEZ under arrest for public intoxication.

16. While PEREZ was arresting GOMEZ at the front lobby, no other officer nor civilian was in the immediate vicinity of the arrest and in a position to perceive and later describe any sensory observations of GOMEZ at the time that the arrest was made. The only individual making an

evaluation or assessment of whether or not GOMEZ was intoxicated at the time of his arrest was PEREZ.

17. Shortly after the arrest, Lieutenant WILLIAM INGRAM (INGRAM), the shift commander, who was not present at the time of the arrest and Commander RANDY DUNN (DUNN), who was at home at the time of the arrest and never observed GOMEZ, made the decision to release GOMEZ on bond in less than the four hours that a publicly intoxicated person is usually held in custody. DUNN ordered that GOMEZ not be allowed to drive himself home and had someone drive him home.

18. The morning after the arrest, PASCHAL, the sergeant in charge of the Brownsville Police Department Internal Affairs Division (IA), met with REYNA and DUNN whom informed him of the arrest of GOMEZ. PASCHAL was ordered by REYNA to start an investigation and to contact the Municipal Court to have the charge against GOMEZ dropped. PASCHAL began his investigation about one week after receiving the order to investigate. REYNA had full access to all of the material gathered by IA.

19. Within a week of receiving the order to investigate from REYNA, and before beginning a meaningful investigation into the allegations, PASCHAL met with the Municipal Court Prosecutor and told him that they felt the GOMEZ arrest was a bad arrest. As a result of that meeting, the charge against GOMEZ was dismissed.

20. PASCHAL decided that the case against PEREZ needed to be pursued allegedly because PEREZ made an improper and unlawful arrest. Throughout the course of the investigation, PASCHAL received guidance from REYNA.

21. Based upon the alleged evidence gathered by PASCHAL and presented to REYNA, REYNA indefinitely suspended PEREZ from his duties and employment with the Brownsville Police Department on July 25, 2000. An indefinite suspension is the equivalent of a termination in a department operating under civil service. REYNA also made statements to the local newspaper, Brownsville Herald, calling PEREZ a liar and a discredit to himself, the department and law enforcement, in general.

22. Pursuant to applicable Civil Service rules, PEREZ appealed the suspension to an independent arbitrator (ARBITRATOR). PEREZ appealed on the basis that the suspension was unlawful, without merit and unsupported by the evidence.

23. In arresting GOMEZ for Public Intoxication, PEREZ was performing his duty as a sworn police officer in the State of Texas as he was trained to do and as prescribed by Texas Law. The arrest was lawful, supported by the evidence and met all of the elements of Public Intoxication as defined by the Penal Code. All of PEREZ' actions on the night in question were performed in good faith, in good judgment, and in the manner and to the extent that he was trained.

24. On January 2001, an arbitration hearing was held in connection with PEREZ' appeal. At the hearing, the City presented the testimony of at least seven witnesses, none of whom were in close proximity to GOMEZ at the time of the arrest, in support of PASCHAL's and REYNA's contention that PEREZ' arrest of GOMEZ was unlawful. The threshold issue for the ARBITRATOR in making his decision was whether or not PEREZ, in good faith, believed GOMEZ was intoxicated. After several days of testimony and consideration of briefs from the City and PEREZ, including briefing on the elements of public intoxication, the ARBITRATOR concluded that PEREZ had probable cause to determine that GOMEZ was intoxicated.

25. On June 19, 2001, after nearly a year of PEREZ being unemployed, the ARBITRATOR ordered PEREZ reinstated to his position and made whole for all lost wages and benefits.

26. However, PEREZ' reinstatement was short-lived. In fact, PEREZ never made it back to duty. The Defendants had failed at their attempt to end PEREZ' career administratively. Nonetheless, despite the clear lack of evidence or probable cause to believe that the GOMEZ arrest was unlawful, the Defendants, within days of the arbitration award reinstating PEREZ, enlisted the assistance of the of the Cameron County District Attorney's office to prosecute PEREZ for his arrest of GOMEZ. Coincidently, within days of the Arbitration Award reinstating PEREZ and over a year after the alleged incident, PEREZ was indicted by the Cameron County District Attorney's Office. PEREZ was once again suspended from his duties.

27. During the pendency of the criminal action and while PEREZ was still on suspension, REYNA left his position as Chief of Police and was replaced by GARCIA. Shortly after GARCIA

took over his new position, GARCIA and PASCHAL once again enlisted the assistance of the Cameron County District Attorney's Office in the Defendants' concerted action to remove PEREZ from the Brownsville Police Department by whatever means available.

28. Although having no prosecutorial rationale or basis for doing so, the Cameron County District Attorney's Office proposed to dismiss the criminal action against PEREZ if he resigned from the Brownsville Police Department. PEREZ was to resign within 90 days during which time he was seeking employment with the U.S. Border Patrol (which application for employment had been submitted and had been pending since before the arrest of GOMEZ occurred). It is interesting to note that the District Attorney's Office did not seek to keep PEREZ out of law enforcement, but only to help effectuate his removal from the Brownsville Police Department. To facilitate this and to prevent PEREZ from coming back to duty, GARCIA, who had full knowledge of the facts of the case and the ARBITRATOR's findings and conclusions regarding the GOMEZ arrest, gave PEREZ a 90 day leave from his duties.

29. Because of the criminal case against him, PEREZ was denied employment with the U.S. Border Patrol. Upon the expiration of his leave, PEREZ finally returned to duty as ordered by the ARBITRATOR. However, once again, this was short-lived. Upon PEREZ' return to duty, PASCHAL and GARCIA, still knowing full well the findings and conclusions of the arbitration, went directly to the Cameron County District Attorney's Office to once again insist on PEREZ' prosecution.

30. Despite his repeated pleas to Defendants and the Cameron County District Attorney's office to recognize the lack evidence or probable cause in the case, especially in light of the Arbitration proceeding, the Cameron County District Attorney's office, at the insistence of the Defendants, forced PEREZ to defend himself from the charge against him and required PEREZ to go through a jury trial. It was clear that the Defendants' efforts to remove PEREZ from the department through the prosecution would not end until their goal was achieved.

31. In October 2002, after the testimony of the same witnesses as in the arbitration proceeding, PEREZ was once again vindicated in that he was acquitted of the charge by way of a directed verdict of not guilty, as so issued by the judge.

## V.

## CAUSES OF ACTION

### A. FRANCISCO GOMEZ

32. COUNT ONE: Plaintiff incorporates herein as if verbatim the allegations in Paragraph IV above. Defendant, GOMEZ, procured and caused there to be filed a criminal complaint or caused the filing of a criminal complaint with the Cameron County District Attorney. The complaint accused Plaintiff of having committed the offense of official oppression. This caused a warrant to issue for Plaintiff's arrest and Plaintiff was subsequently arrested and detained in custody before giving bond, charged by information with committing that crime, and tried on the information. The criminal proceedings were terminated in Plaintiff's favor. Plaintiff will further show that he was innocent and that Defendant lacked probable cause for instigating the criminal proceedings. Based on the above-described facts, Defendant acted with malice in bringing about the prosecution. Plaintiff has suffered substantial damages as a proximate cause of the acts of Defendant.

### B. GOVERNMENTAL DEFENDANTS

33. COUNT ONE: Plaintiff incorporates herein as if verbatim the allegations in Paragraph IV above. After an extensive investigation into the allegations against Plaintiff and after the arbitration proceeding resulting in Plaintiff's favor, the Defendants THE CITY OF BROWNSVILLE, REYNA, GARCIA and PASCHALL could not have reasonably believed that there was probable cause to procure or cause the initiation of criminal charges against Plaintiff. THE CITY OF BROWNSVILLE, REYNA, GARCIA and PASCHALL acting in concert with each other and Defendant GOMEZ and at their instance procured and caused the initiation of criminal charges against Plaintiff without probable cause. Defendants withheld, ignored, or failed to reveal evidence and information relevant to the prosecution and necessary to evaluate whether the case should have been prosecuted in the first instance. Defendants procured groundless charges with fabricated evidence or no evidence. Said initiation of criminal charges resulted in Plaintiff's seizure, arrest and detention in violation of the Fourth and Fourteenth Amendments to the United States Constitution. Defendants' acts were the proximate cause of damages suffered by Plaintiff.

34. COUNT TWO: Plaintiff incorporates herein as if verbatim the allegations in Paragraph IV above. THE CITY OF BROWNSVILLE, REYNA, GARCIA, and PASCHALL withheld, ignored, or failed to reveal evidence and information relevant to the prosecution and necessary to evaluate whether the case should have been prosecuted in the first instance. Defendants procured the prosecution of groundless charges with fabricated evidence or no evidence. Defendants thereafter knowingly and at their instance procured and/or used said evidence at Plaintiff's criminal trial in an effort to further damage Plaintiff and in furtherance of their goal to inflict irreparable damage to Plaintiff's personal and professional reputation; and to stigmatize and foreclose future professional employment opportunities to Plaintiff. Said conduct was in violation of Plaintiff's due process rights as protected by the Fourteenth Amendment to the United States Constitution.

35. The Defendants' malicious actions herein are sufficiently egregious to meet the federal test and, under the circumstances of this case, the Defendants' overzealous prosecution of Plaintiff shocks the conscience of any reasonable person. This criminal prosecution was brought with malice and in bad faith and continued by the Defendants with reckless disregard of Plaintiff's clearly established constitutional rights.

## VII.

37. As a direct and proximate cause of the acts of the Defendants, Plaintiff has (A) lost his employment; (B) sustained irreparable damage to his personal and professional reputation; (C) been stigmatized; (D) suffered mental anguish and severe mental anguish; and, (E) suffered substantial pecuniary loss as indicated herein. For months, Plaintiff was required to attend numerous Court hearings and proceedings and suffer the anxiety and uncertainty attendant to a criminal prosecution.

**WHEREFORE PREMISES CONSIDERED,** Plaintiff prays that Defendants be cited to appear and answer, and on notice and hearing that Plaintiff have and recover judgment against Defendants for.

A.   A sum in excess of the minimum jurisdictional limits of the Court for compensatory damages and punitive damages in excess of the minimal jurisdictional limits of this court;

B.   Prejudgment and post judgment interest at the maximum legal rate;

C.   Reasonable attorney's fees allowed under 42 U.S.C. § 1988;

D.   Costs of Court; and,

E.   Such other relief, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

GARCIA & LOPEZ
214 West Cano St.
Edinburg, TX. 78539
Tel: 956-383-0158
Fax: 956-380-0113

By:   _____
Roberto M. Garcia
State Bar No. 07645500
USDC. No. 3940

_____
Francisco J. Prado, Jr.
State Bar No. 00794483
USDC No. 20491

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Plaintiff's Second Amended Original Complaint has been issued to all attorneys of record on March 22, 2004 by via certified mail, return receipt request, telecopier and/or via messenger.


**Charles Willette, Jr.**
Willette & Guerra, L.L.P.
1534 East 6th Street, Suite 200
Brownsville, Texas 78520.

**Michael Scott**
Attorney at Law
1424 W. Price Rd. # 605
Brownsville, TX 78520

Roberto M. Garcia
Francisco J. Prado, Jr.